1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES R. ABRAMS, | CASE NO. 21-CV-05374-LK |
| Plaintiff, | ORDER GRANTING IN PART |
| v. | AND DENYING IN PART |
| SEQUIUM ASSET SOLUTIONS, LLC, | PLAINTIFF'S MOTION FOR |
| | ATTORNEY FEES |
| Defendant. | |

Before the Court is Plaintiff James Abrams' Motion for Attorney Fees. Dkt. No. 39. For the reasons discussed below, the Court grants in part and denies in part the motion. Abrams is entitled to the reasonable fees incurred prior to the expiration of Defendant Sequium Asset Solutions, LLC's Rule 68 offer of judgment.

## I.        BACKGROUND

In April 2021, proceeding pro se, Abrams sued Sequium Asset Solutions ("SAS") in Cowlitz County District Court for "[v]iolations of state and federal fair credit and debt collections

acts." Dkt. No. 1-2 at 1.[1] He sought $6,593.40 in damages. *Id.* SAS timely removed the action to

federal district court based on federal question jurisdiction, *see* Dkt. No. 1 at 1–2, following which

attorneys Rory Stevens and Andrew Grimm appeared on behalf of Abrams, Dkt. Nos. 7–8. SAS

soon moved for judgment on the pleadings. Dkt. No. 10; *see* Fed. R. Civ. P. 12(c). Although the

Court granted that motion, it permitted Abrams leave to amend his complaint. Dkt. No. 13 at 2.

Abrams thereafter filed an amended complaint with class action allegations accusing SAS

of violating the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p ("FDCPA"), and

Washington's Consumer Protection Act, Wash. Rev. Code §§ 19.86.010–19.86.920 ("CPA"). Dkt.

No. 16 at 1, 11–13. More specifically, he claimed that SAS (Counts 1 and 2) violated 15 U.S.C. §

1692c(b) by "disclosing detailed debt information to unrelated third-party non-debtors" and

"systematically using and communicating extensive information about debtors, debts, and debt-

collection activities to third-party websites that were then spread across the Internet"; (Counts 3,

4, and 5) violated 15 U.S.C. § 1692d by "relying exclusively or almost exclusively upon unverified

or mostly unverified location information gleaned from third-party websites," "suggesting to

consumers that they were the subject of fraud and/or identity theft, either without any basis or, if

with basis, by refusing to provide relevant details," and "providing large-scale data disclosures to

third-party websites regarding the accounts for which it is attempting to collect debts"; (Counts 6

and 7) violated 15 U.S.C. § 1692e by "asserting consumers owe debts that they in fact do not" and

"communicating unsubstantiated claims of fraud and/or identity theft to individuals"; and (Count

8) violated 15 U.S.C. § 1592f by "communicating unsubstantiated claims of fraud and/or identity

theft to individuals that it either cannot or will not substantiate." *Id.* at 15–18. Abrams' final cause

of action alleged that SAS (Count 9) violated Sections 19.86.020 and 19.86.095 of Washington's

---

[1] Abrams filed a Small Claims Notice of Claim. Dkt. No. 1-2 at 1.

Consumer Protection Act by lying to class members "about being victims of identity theft/fraud," which "induc[ed] them to spend money on credit monitoring services[.]" *Id.* at 18.

In their November 2021 joint status report, the parties indicated that Abrams' claims "vary widely in their complexity" because some "appear to be relatively simple and straightforward, raising run-of-the-mill FDCPA violations under well-established precedent with few factual wrinkles," while others were "likely to be highly complex—requiring the judicial resolution of what appear to be open questions of law and . . . factual questions related to technology and data usage by SAS and third parties." Dkt. No. 23 at 3. The joint status report explicitly singled out Abrams' Section 1692c and 1692d claims as "highly complex" due to "complex questions of statutory interpretation, complex facts going to the core of SAS's business practices, complex fact[s] involving an unknown number of third-party data processors and information brokers, and likely more." *Id.* at 6. The parties thus "expect[ed] meaningful discovery as well as extensive briefing of open questions of statutory interpretation relating to the deployment and implementation of uncertain technologies in the debt-collection space." *Id.* And finally, they anticipated a five-day trial. *Id.* at 9.

The Court set May 27, 2022 as the deadline for Abrams to file a class certification motion. Dkt. No. 26 at 1. On May 19th, however, SAS served a Rule 68 offer of judgment on Abrams. Dkt. No. 37 at 3. The offer proposed judgment against SAS "in the total sum of $1,001.00." *Id.* at 4. And, as particularly relevant here, it included the following language: "Plaintiff shall be entitled to all permissible costs incurred and reasonable attorneys' fees incurred in pursuing the claims against Defendant in this action prior to the expiration of this offer, the total amount to be determined by the Court upon application by Plaintiff or by agreement of the parties." *Id.* Abrams timely accepted SAS's offer. *Id.* at 1.

1    The Court then directed Abrams to file, within 14 days, a motion for attorney fees and costs

2    "supported by billing records, attorney affidavits, and any other documentation necessary to

3    determine the reasonableness of the proposed fees and costs." Dkt. No. 38 at 2 (citing *Camacho v.*

4    *Bridgeport Fin., Inc.*, 523 F.3d 973, 978–81 (9th Cir. 2008)). Alternatively, the Court invited the

5    parties to "agree to the amount of attorney fees and costs by filing a notice of agreement." *Id.* The

6    parties apparently could not reach a mutually acceptable accounting of fees and costs. Abrams thus

7    timely filed a motion seeking an award of $75,150 in fees. Dkt. No. 39 at 1. SAS disputes the

8    reasonableness of this amount and, through a series of proposed cuts and adjustments, asks the

9    Court to reduce the fee award to $7,236. Dkt. No. 45 at 15. Nor does the dispute end there.

10   According to Abrams, he is entitled to recover an additional $11,000 for fees-on-fees—bringing

11   his total request to $86,150. Dkt. No. 49 at 1.

12                                    **II.    DISCUSSION**

13          The Court first tackles the reasonableness of the requested fees with respect to Abrams'

14   FDCPA claims. It then addresses the fees associated with his CPA claim. And last, the Court

15   explains why Abrams is not entitled to recover fees for the work his attorney did after acceptance

16   of SAS's Rule 68 offer of judgment.

17          Although the district court retains "a great deal of discretion" in determining the

18   reasonableness of fees, *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992), it must "provide

19   a concise but clear explanation of its reasons for the fee award," *Hensley v. Eckerhart*, 461 U.S.

20   424, 437 (1983). The Ninth Circuit has interpreted the "concise but clear" directive "as requiring

21   the district court to give at least some indication of how it arrived at the amount of compensable

22   hours for which fees were awarded to allow for meaningful appellate review." *Deukmejian*, 987

23   F.2d at 1398; *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 n.3 (9th Cir. 1986) (the district

24

court "need not set forth in exhaustive detail the method of calculating an attorney's fee award," but "something more than a bald, unsupported amount is necessary.").

There is an inverse relationship between detail required and the district court's departure from the requested amount. "Where the difference between the lawyer's request and the court's award is relatively small, a somewhat cursory explanation will suffice. But where the disparity is larger, a more specific articulation of the court's reasoning is expected." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016) (a large disparity between the fees requested and those awarded "requires a relatively specific articulation of the court's reasoning"); *see also Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003) ("The rules governing both reduction and enhancement have become increasingly refined over time, and we have therefore required careful explanations by district courts of statutory fee determinations.").

## A.    Reasonable Fees Under the FDCPA

In any successful action to enforce the FDCPA, the offending debt collector is liable for "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). District courts use the two-step lodestar method to determine reasonable fees in FDCPA cases. *Camacho*, 523 F.3d at 978. "First, the court must calculate the 'lodestar figure' by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). "Second, the court must decide whether to enhance or reduce the lodestar figure based on an evaluation of the *Kerr* factors that are not already subsumed in the initial lodestar calculation." *Id.* Those factors include (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or

contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992) (contingency fee multipliers are unavailable under federal fee-shifting statutes).

A district court should not, however, prophylactically apply the *Kerr* factors in every case. *See Cairns v. Franklin Mint. Co.*, 292 F.3d 1139, 1158 (9th Cir. 2002). "[T]here is a 'strong presumption' that the lodestar figure is reasonable," *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010), because the *Kerr* factors "are largely subsumed within the initial calculation of reasonable hours expended at a reasonable hourly rate, rather than the subsequent determination of whether to adjust the fee upward or downward," *Chalmers*, 796 F.2d at 1212. The Ninth Circuit presumes that a district court's initial lodestar computation accounts for the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, the results obtained, and the contingent nature of the fee agreement. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 n.11 (9th Cir. 2013); *accord Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996). In sum, the lodestar figure "includes most, if not all, of the relevant factors constituting a reasonable attorney's fee," and a departure from that figure is permitted "only in certain rare and exceptional cases, supported by both specific evidence on the record and detailed findings[.]" *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565-66 (1986) (cleaned up); *accord Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006) ("We have previously said that only in rare circumstances should a court adjust the lodestar figure, as this figure is the presumptively accurate measure of reasonable fees.").

1      1.    <u>Reasonable Rate</u>

2      Reasonable fees "are to be calculated according to the prevailing market rates in the

3  relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel."

4  *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The relevant community is the forum in which the

5  district court sits. *See Camacho*, 523 F.3d at 979. Although "determining an appropriate 'market

6  rate' for the services of a lawyer is inherently difficult," *Blum*, 465 U.S. at 895 n.11, the Court is

7  "guided by the rate prevailing in the community for similar work performed by attorneys of

8  comparable skill, experience, and reputation," *Chalmers*, 796 F.2d at 1210–11. Abrams is the fee

9  applicant and therefore bears the burden of producing "satisfactory evidence—in addition to the

10  attorney's own affidavits—that the requested rates are in line with those prevailing in the

11  community for similar services by lawyers of reasonably comparable skill, experience, and

12  reputation." *Blum*, 465 U.S. at 895 n.11. And as the party opposing fees, SAS must rebut Abrams'

13  request by submitting evidence to the Court "challenging the accuracy and reasonableness of the .

14  . . facts asserted by [Abrams] in [his] submitted affidavits." *Deukmejian*, 987 F.2d at 1397–98.

15      The Ninth Circuit has made clear that "satisfactory evidence" of market rates includes

16  "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the

17  community, and rate determinations in other cases, particularly those setting a rate for the

18  plaintiffs' attorney[.]" *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th

19  Cir. 1990); *Moreno*, 534 F.3d at 1115 ("District judges can certainly consider the fees awarded by

20  other judges in the same locality in similar cases."). The Court may also rely on its own knowledge

21  and familiarity with the legal market in setting a reasonable rate. *Ingram v. Oroudjian*, 647 F.3d

22  925, 928 (9th Cir. 2011) (per curiam). When, however, the Court turns to rate determinations in

23  other cases, it may not rely on cases "decided years before the attorneys actually rendered their

24  services." *Camacho*, 523 F.3d at 981; *see, e.g.*, *Bell v. Clackamas Cnty.*, 341 F.3d 858, 869 (9th

Cir. 2003) (district court abused its discretion in applying market rates in effect more than two years before the work at issue was performed). Nor do declarations filed by the fee applicant "conclusively establish the prevailing market rate." *Camacho*, 523 F.3d at 980; *accord Chalmers*, 796 F.2d at 1210 ("Determination of a reasonable hourly rate is not made by reference to rates actually charged [to] the prevailing party."); *see also, e.g.*, *Black Lives Matter-King Cnty. v. City of Seattle*, 516 F. Supp. 3d 1202, 1213 (W.D. Wash. 2021) (giving "little weight" to law firm's "self-assessment" of reasonable fees in the Seattle market made "without a single outside source to corroborate the assessment").

Abrams seeks $400 per hour for attorneys Andrew Grimm and Gregory Keenan, and $350 per hour for attorney Rory Stevens. Dkt. No. 39 at 8; Dkt. No. 58 at 6. He submits Grimm's declaration in support of these rates. *See* Dkt. No. 58. Grimm is "Senior Counsel" for the "Intake & Litigation" department at the Digital Justice Foundation, "a nonprofit public-interest firm focusing on cutting-edge issues at the intersection of technology and law and on access to law." *Id.* at 1. He graduated law school in 2016, has been licensed in Washington since that time, and previously worked at K&L Gates LLP. *Id.* at 2. As for experience, Grimm attests that—while at the Digital Justice Foundation—he has "played a major role in three merits victories" before the Ninth and Eighth Circuits. *Id.* (citing cases). He has also "contributed to a number of amicus briefs where the public-interest position of the [Digital Justice Foundation] either reframed appeal or was directly adopted into law." *Id.* at 2–3 (citing cases out of the Fourth, Sixth, and D.C. Circuits). Grimm's "particular expertise," however, is "finding cases and building client relationships with vulnerable and underrepresented persons who most need nonprofit litigation assistance[.]" *Id.* at 3.

Keenan is "Senior Advisory & Appellate Counsel" at the Digital Justice Foundation. *Id.* He graduated from law school in 2018 and has been licensed in New York ever since. *Id.* Prior to

joining the Digital Justice Foundation, Keenan worked at Jones Day. *Id.* at 4. He served as lead counsel in each of the appellate cases Grimm "played a major role in," and was either lead or contributing counsel in cases "where the public-interest position of the [Digital Justice Foundation] either reframed appeal or was directly adopted into law[.]" *Id.* at 2, 4 (citing the same cases out of the Fourth, Sixth, and D.C. Circuits). As for Stevens, he is a solo practitioner "running his own firm that practices in the areas of family law, consumer protection, and personal injury." *Id.* at 5. Stevens graduated from law school in 2020 and has been licensed in Washington since that time. *Id.* Prior to operating his own law firm, he worked for "reputable personal-injury firms in the Seattle area" and acquired "experience in a wide range of litigation matters, including cases involving personal injury, wrongful death, unfair debt collection practices, and intellectual property matters, with a focus on complex and novel legal matters." *Id.* (briefly cataloguing cases involving CAFA jurisdiction, California tort law, Japanese copyright law, default judgment, and settlement of personal injury claims).

SAS correctly observes that Abrams did not submit declarations from other attorneys or fee surveys to establish the customary rate for similarly experienced counsel in FDCPA cases. Dkt. No. 45 at 5. But nor did SAS. *See United Steelworkers*, 896 F.2d at 407 ("Although the defendants disagreed with this evidence, they did not support their arguments with any affidavits or evidence of their own regarding legal rates in the community."). Indeed, both parties rely exclusively on intra-district FDCPA cases involving various levels of experience and complexity. *Compare* Dkt. No. 39 at 8, *with* Dkt. No. 45 at 6.[2] The rates awarded in these cases can constitute "satisfactory evidence." *See Moreno*, 534 F.3d at 1115. SAS contends, though, that none of Abrams' cases are

---

[2] SAS also cites to a case out of the Eastern District of Washington in its opposition brief, and Abrams cites to three cases out of the Central District of California in his reply brief. *See* Dkt. No. 45 at 6; Dkt. No. 49 at 5–6. The Court considers the rates in those cases to be instructive data points. Again, however, the controlling rates are those set by courts in the Western District of Washington. *Camacho*, 523 F.3d at 979.

1    applicable here. Dkt. No. 45 at 5. It instead urges reliance on the cases cited in its own briefing.

2    *Id.* at 6. Based on those cases, SAS argues, the Court should reduce Grimm and Keenan's rate to

3    $250 per hour and Stevens' rate to $200 per hour. *Id.*

4          As an initial matter, the Court agrees with Abrams that "years in practice is not the be-all

5    and end-all in determining the reasonableness of an attorney's hourly rate." *Caccamise v. Credit*

6    *One Bank, N.A.*, No. 18-CV-971-JLS (BLM), 2020 WL 804741, at *4 (S.D. Cal. Feb. 18, 2020);

7    *see* Dkt. No. 49 at 6. In *Caccamise*, the court found $400 an hour reasonable for an attorney with

8    four years of experience because he "ha[d] litigated over ninety-three individual and putative class

9    actions under consumer protection statutes, ha[d] served on multiple committees with the Federal

10   Bar Association, and ha[d] lectured on consumer law and class actions at law schools and

11   universities." 2020 WL 804741, at *4, 6. The court also found $300 an hour reasonable for an

12   attorney with two years of experience because she "litigated over fifty-four consumer rights cases

13   and [was] an Adjunct Professor at California Western School of Law who ha[d] given lectures on

14   civil litigation and civil procedure." *Id.* at *4, 6. But Grimm, Keenan, and Stevens are not as

15   experienced as the plaintiff's attorneys in *Caccamise*. Although the Court applauds the hard work

16   they have done for vulnerable and underrepresented clients, and it does not question their

17   familiarity with topics "at the intersection of technology and the law," Grimm's declaration does

18   not establish experience comparable to that of the *Caccamise* attorneys—let alone experience

19   specific to the FDCPA. Grimm and Keenan were involved in the same seven specifically

20   referenced cases. Dkt. No. 58 at 2–4. The declaration likewise musters up four specific case names

21   with respect to Stevens. *Id.* at 5. The Court does not suggest that the named cases are the only

22   experience counsel has; however, they do not have the tried and distinguished background that

23   might justify rates above the standard for a sixth-, fourth-, and second-year associate.

24

Abrams' counsel worked on this case between late May 2021 and early June 2022. *Id.* at 7–14. The Court therefore accords heavy weight to rates in FDCPA cases decided after May 2019, and treats older cases or cases from similar markets as merely instructive. *See Bell*, 341 F.3d at 869 (district court abused its discretion by applying market rates in effect more than two years before the work at issue was performed); *Fulton v. Livingston Fin. LLC*, No. C15-0574-JLR, 2016 WL 3976558, at *4 (W.D. Wash. July 25, 2016) (treating cases that were "several years old" as "somewhat dated points of reference"). The data from recent intra-district cases indicates that the requested rates are inflated. *See Rodriguez v. Evergreen Pro. Recoveries, Inc.*, No. C19-0184-JCC, 2021 WL 2577130, at *3 (W.D. Wash. June 23, 2021) (awarding $475 and $400 per hour in class action FDCPA case for attorneys with 10 years' and 7 years' experience in consumer litigation); *Neuman v. Swiftfunds Fin. Servs., LLC*, No. C20-931-RSM, 2020 WL 7028947, at *3 (W.D. Wash. Nov. 30, 2020) ($344.50 per hour reasonable in FDCPA case for attorney with 6 years of experience in consumer litigation; attorney had settled over 600 consumer rights cases and arbitrated, mediated, and pre-tried dozens of other cases).[3] At least two slightly older cases suggest this, too. *See Weinstein v. Mandarich Law Grp., LLP*, No. C17-1897-RSM, 2019 WL 859277, at *2 (W.D. Wash. Feb. 22, 2019) ($400 and $350 per hour reasonable for FDCPA attorneys with 13 years and 6 years of experience, respectively); *Brandt v. Columbia Credit Servs., Inc.*, No. C17-703-RSM, 2018 WL 4963109, at *1 (W.D. Wash. Oct. 15, 2018) ($400 per hour reasonable in FDCPA case for attorney practicing law for 13 years).[4]

---

[3] The specifics for counsel's experience do not appear in the slip opinions for these cases. The Court retrieved that information from the dockets. *See Rodriguez v. Evergreen Pro. Recoveries, Inc.*, Case No. C19-0184-JCC, Dkt. No. 53-3 at 1–3 (W.D. Wash. Nov. 16, 2020); *Neuman v. Swiftfunds Fin. Servs., LLC*, Case No. C20-931-RSM, Dkt. No. 8-3 at 3–4 (W.D. Wash. Sept. 14, 2020).

[4] The specifics for counsel's experience in *Weinstein* do not appear in the slip opinion. The Court retrieved that information from the docket. *See Weinstein v. Mandarich Law Grp., LLP*, Case No. C17-1897-RSM, Dkt. Nos. 44-1 at 2, 44-2 at 2 (W.D. Wash. Jan. 30, 2019).

The Court finds further support in recent cases from the Eastern District of Washington and Northern District of California. Again, the Court does not rely on these rates as definitive evidence of what is reasonable for similarly experienced attorneys litigating FDCPA cases in *this* district, but—given counsel's limited experience—they suggest that the requested rates exceed what is reasonable. *See Russell v. GC Servs. Ltd. P'ship*, No. 2:19-CV-273-RMP, 2020 WL 6157782, at *7 (E.D. Wash. Oct. 15, 2020) ($300 per hour reasonable in FDCPA case with "straightforward issues" where attorney had at least five years of experience litigating FDCPA cases); *Reenders v. Premier Recovery Grp.*, No. 18-CV-07761-PJH (JSC), 2019 WL 2583595, at *6 (N.D. Cal. May 7, 2019) (awarding $225 hourly rate for attorney with two years' experience in simple FDCPA case).

Finally, the Court notes that the respective attorneys' efficiency (or lack thereof)—discussed below—informs the reasonableness of the rates charged. "A fee applicant cannot demand a high hourly rate—which is based on his or her experience, reputation, and a presumed familiarity with the applicable law—and then run up an inordinate amount of time researching that same law. Double dipping, in any form, cannot be condoned." *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983); *see also, e.g.*, *Ogawa v. Malheur Home Tel. Co.*, No. CV 08-694-MO, 2011 WL 1299602, at *2 (D. Or. Apr. 1, 2011) ("[G]iven the striking amount of time spent by the attorneys on this relatively simple single-plaintiff case, I am skeptical regarding what gains in efficiency the attorneys' expertise produced here."); *Inst. for Wildlife Prot. v. U.S. Fish & Wildlife Serv.*, No. 07-CV-358-PK, 2008 WL 4866063, at *1 (D. Or. Nov. 5, 2008) ("[C]onducting [a large] amount of prelitigation legal research is inconsistent with the assertion of Plaintiff's counsel that his expertise in environmental law warrants an enhanced hourly rate."). In addition, Abrams' submissions to the Court have been riddled with typos and other mistakes—mistakes characteristic of inexperienced attorneys and reflective of a level of skill, quality, and attention that merits a

lower billing rate. *See, e.g.*, Dkt. No. 51 (striking portions of briefs for violating the Local Civil Rules); Dkt. No. 57 (striking deficient declaration).

Considering precedent in conjunction with counsel's lack of experience in this subject matter and the Court's knowledge and familiarity with the local market, the Court finds the following rates reasonable: (1) Grimm, $350 per hour; (2) Keenan, $300 per hour; and (3) Stevens, $200 per hour.

        2.   <u>Hours Reasonably Expended</u>

"The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno*, 534 F.3d at 1111. Abrams again "bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). And, as with the hourly rate, SAS "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged[.]" *Deukmejian*, 987 F.2d at 1397–98. It must "specifically identify[] defects or deficiencies in the requested hours" because "conclusory or unsubstantiated objections [are] insufficient to warrant a reduction." *Bidwal v. Unifund CCR Partners*, No. 3:17-CV-02699-LB, 2019 WL 4039955, at *9 (N.D. Cal. Aug. 27, 2019). However, this does not mean that the Court must make findings as to each of SAS's specific objections to the billing records. *Deukmejian*, 987 F.2d at 1400. The Court typically defers "to the winning lawyer's professional judgment as to how much time he was required to spend on the case," *Moreno*, 534 F.3d at 1112, but it does not "uncritically accept counsel's representations concerning the time expended," *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 n.8 (9th Cir. 1987). The Court will therefore "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley*, 461 U.S. at 434.

Abrams requests a total of 82.3 hours for Grimm, 39.6 hours for Keenan, and 75.4 hours for Stevens. Dkt. No. 39 at 9; Dkt. No. 58 at 6. SAS contends that these hours are unreasonable for several reasons and requests a hefty reduction. Dkt. No. 45 at 6–12. Based on its review of the billing records, SAS proposes an award of 16.1 hours for Grimm, 8 hours for Keenan, and 15.1 hours for Stevens. *Id.* at 15. The Court addresses SAS's specific challenges in turn.

### a.   *Excessive and Unnecessary Fees*

SAS first contends that the billing records are replete with "excessive and unnecessary fees for things that [Abrams] is not allowed to recover and should not be allowed to recover." *Id.* at 8. By way of example, it identifies three hours billed for drafting the attorney-client contract between Abrams and counsel; 13 hours billed for review of Ninth Circuit FDCPA decisions and "looking into open issues of appellate law that could be developed"; 23 hours billed for drafting the amended complaint; eight hours billed for drafting a joint status report; and eight hours billed for a motion to clarify a Local Civil Rule—"an issue which was resolved summarily by the Court." *Id.* SAS further suggests that Abrams' counsel overstaffed this case because it "did not require the involvement of three different attorneys to handle what little litigation was conducted." *Id.* ("Plaintiff's counsel's billing records show multiple instances of a task being completed by multiple attorneys when it was not necessary."). Specifically, it challenges "multiple entries with multiple counsel handling phone calls with [Abrams]"; the fact that all three attorneys participated in drafting the joint status report; and the fact that all three attorneys prepared for, attended, and debriefed Abrams' 2.5-hour deposition. *Id.* at 8–9. SAS argues that a 40% reduction of the total hours billed "will properly account for the unnecessary and excessive work performed by [Abrams'] counsel." *Id.* at 9; *see* Dkt. No. 45-1 at 1–2 (itemizing 62.2 hours of unnecessary and excessive work).

As a threshold matter, "across-the-board percentage cuts" like the one SAS proposes are an appropriate practical measure only when the Court is faced with "a massive fee application." *Deukmejian*, 987 F.2d at 1399 (noting that the "meat-axe approach" has been criticized even in cases involving substantial amounts of money). That is not the case here. Abrams has submitted roughly seven pages of billing records, and the Court can conduct an hour-by-hour analysis of the challenged hours to exclude those that are unreasonable. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013). Although the Court agrees that many of the hours logged by Abrams' counsel are over the top, they are not universally excessive or so outlandish as to warrant a sweeping reduction.

The Court does not award fees for the over eight hours dedicated to Abrams' five-page Motion for Clarification of Local Civil Rule 23(i)(3); specifically, 220 minutes (Grimm), 105 minutes (Keenan), 218 minutes (Stevens). Dkt. No. 24; *see also* Dkt. No. 58 at 9, 10, 13.[5] The motion effectively sought legal advice from the Court, and the Court had already published proposed amendments to its local rules that repealed the rule at issue in its entirety. *See* Dkt. No. 35; Archived Court Website for Local Rules and General Orders (captured Jan. 15, 2021), https://web.archive.org/web/20210115084744/https://www.wawd.uscourts.gov/local-rules-and-orders (inviting the public to review and comment on proposed amendments to the Local Civil Rules); Archived Proposed Rules (captured Jan. 15, 2021), https://web.archive.org/web/20201205061615/https://www.wawd.uscourts.gov/sites/wawd/files/WDWA_Local_Civil_Rules-Redline_November_2020%20Final.pdf.

Although this case is potentially more complex than the average FDCPA case, the Court likewise finds excessive the approximately 23.9 hours counsel expended drafting Abrams'

---

[5] The Court questions why it took Grimm 20 minutes to review the Court's half-page order denying as moot the motion for clarification. Dkt. No. 35; Dkt. No. 58 at 9.

amended complaint—even considering the class allegations. Dkt. No. 16. It therefore reduces the hours each attorney spent on it by half. The following time is subtracted from the total hours logged with respect to the amended complaint: 300 minutes (Grimm), 169.5 minutes (Keenan), and 248 minutes (Stevens). *See* Dkt. No. 45-1 at 1–2. And last, a retainer agreement should not require 3.5 hours of attorney time to prepare, review, and finalize. *Id.* at 2. That Grimm later prepared a "new client contract for full service and prosecution of the case" does not render that time reasonable. *Id.* The Court thus reduces the hours Grimm spent on this task by half. *See, e.g.*, *Seymour v. Comm'r of Soc. Sec.*, No. C21-5213-MAT, 2022 WL 1641450, at *2 (W.D. Wash. May 24, 2022) (.9 hours spent preparing and reviewing a retainer agreement for client signing was excessive; deducting .5 hours); *Teague v. Comm'r of Soc. Sec.*, No. 3:19-CV-05727, 2020 WL 3077149, at *2 (W.D. Wash. June 10, 2020) (.8 hours spent preparing retainer agreement was excessive; deducting .4 hours). The following time is subtracted from the total hours logged with respect to the two retainer agreements: 105 minutes (Grimm). *See* Dkt. No. 45-1 at 2; Dkt. No. 58 at 7–8. The Court also finds the over eight hours billed to prepare the eight-page joint status report excessive, and reduces that time by half: 157.5 minutes (Grimm), 15 minutes (Keenan), 80 minutes (Stevens). Dkt. No. 58 at 8–10, 13. The Court declines to reduce the time counsel expended researching the FDCPA because it finds nothing per se gratuitous or unnecessary about those hours.

Nor did Abrams' counsel overstaff this case or otherwise bill duplicative hours for tasks involving multiple attorneys—with one exception. The Ninth Circuit has emphasized that "[i]t is only where the lawyer does *unnecessarily* duplicative work that the court may legitimately cut the hours," and "determining whether work is unnecessarily duplicative is no easy task." *Moreno*, 534 F.3d at 1112–13. Participation of more than one attorney thus "does not necessarily amount to unnecessary duplication of effort." *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286

(9th Cir. 2004); *accord Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989). Rather, the Court must "exercise judgment and discretion, considering the circumstances of the individual case, to decide whether there was unnecessary duplication." *Reed*, 388 F.3d at 1286–87; *see Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001) ("Some systematic perusal of the actual billing entries will often confirm that the reason for the seemingly high fee was not inefficiency, but careful compliance with the attorneys' responsibilities."). And it "should take into account the reality that some amount of duplicative work is 'inherent in the process of litigating over time.'" *Stetson*, 821 F.3d at 1166 (quoting *Moreno*, 534 F.2d at 1112).

SAS's assertion that this case "was a relatively straight forward [sic] FDCPA matter that did not necessitate three attorneys" is belied by the parties' November 2021 joint status report. Dkt. No. 45 at 9. As summarized above, this filing includes a mutual representation that Abrams' claims "var[ied] widely in their complexity." Dkt. No. 23 at 3. Some of his claims did involve "run-of-the-mill FDCPA violations," but others posed "highly complex" factual and legal questions. *Id.*; *see also id.* at 6 (specifically identifying Section 1692c and 1692d claims as "highly complex"). That this case may seem standard or unexceptional in the retrospective light of settlement does not mean it was always run-of-the-mill or overstaffed. And even if the issues in this case were relatively "straightforward," this is not an egregious situation in which, say, eight lawyers and five law clerks teamed up to represent Abrams. *See Rebic v. Credit Int'l Corp.*, No. C10-5323-RAJ, 2011 WL 4899979, at *2 (W.D. Wash. Oct. 14, 2011).

Indeed, courts have long recognized that attorney collaboration is a routine and critical aspect of litigation. *See Campbell v. Cath. Cmty. Servs. of W. Wash.*, No. C10-1579-JCC, 2012 WL 13050592, at *6 (W.D. Wash. Aug. 8, 2012) ("[C]ollaborating with others and jointly formulating legal theories is an intrinsic part of litigation success."). The same principle applies to counsel's preparation for and attendance at Abrams' deposition. *See Sierra Club v. BNSF Ry. Co.*,

276 F. Supp. 3d 1067, 1074 (W.D. Wash. 2017) ("[I]t is not uncommon for complex litigation to require and necessitate multiple attorneys at each deposition."). Thus, while SAS chides counsel for expending 17.5 hours total on a 2.5-hour deposition, this overlooks the different roles attorneys serve while preparing for and participating in depositions.[6]

### b. Inadequately Specified Tasks

SAS next claims that "[m]any of the billing entries submitted by [Abrams'] counsel, specifically those of Mr. Keenan and Mr. Stevens, are vague and nonspecific." Dkt. No. 45 at 9. It takes issue with descriptions like "Legal Research," "phone call," "writing memo," and "search HR." *Id.* at 9–10; *see* Dkt. No. 45-2 at 1–2 (itemizing 43.7 hours of inadequately specified time). According to SAS, this oversight warrants an additional 20% reduction from the total hours. Dkt. No. 45 at 10. The Court again declines to paint with such a broad stroke. However, it agrees that major reductions are in order. Counsel must provide "sufficient information for the Court to assess the nature of the work done" and determine whether "the effort expended during th[e] hours [claimed] was reasonable." *Cath. Cmty. Servs.*, 2012 WL 13050592, at *5. Some of the entries identified by SAS fail to do so.

The problem with these descriptions is that they provide no information—legal research on what? The FDCPA or the CPA? Something else entirely? The same goes for unspecified memo drafting, motion and email review, and calls with co-counsel. To be sure, some of the entries— although vague—are self-explanatory (e.g., drafting and revising the complaint). But the vast

---

[6] In a footnote, SAS specifically questions the 2.5 hours Keenan billed for Abrams' deposition because "he did not even formally appear in [it]" and "is not listed as counsel of record in attendance by the Court reporter." Dkt. No. 45 at 9 n.3; *see* Dkt. No. 58 at 10 (billing records indicating that Keenan telephonically attended deposition). Abrams correctly notes that a party may recover time expended by a non-appearing attorney. Dkt. No. 39 at 8; *see Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 823–24 (9th Cir. 2009); *Waite v. Clark Cnty. Collection Servs.*, 606 F. App'x 864, 866 (9th Cir. 2015). As noted above, attorneys serve different roles in proceedings—including depositions—and Keenan could have performed a variety of tasks from afar, e.g., extensive notetaking. Keenan's lack of formal appearance in this case thus does not preclude recovery for his otherwise reasonably expended hours. Nor does his telephonic presence at the deposition render those hours per se duplicative or unnecessary.

majority are not. And the Court has no way of ascertaining whether the work done and hours billed for those entries are reasonable. The Court thus reduces by half the following Grimm entries: "Reviewed email from co-counsel to client regarding" on June 3, 2021 (10 minutes, now reduced by 5 minutes) and "Reviewed Rory's email to the client and then discussed it with him" (60 minutes, now reduced by 30 minutes) on October 25, 2021. Dkt. No. 45-4 at 1.[7] It further reduces by half the time Keenan expended on the following insufficiently detailed tasks: "Legal Research" on June 3, June 4, August 29, and August 30, 2021 (10.4 hours, now reduced by 5.2 hours); "Draft Memo re: research findings" on June 5, 2021 (1.5 hours, now reduced by .75 hours); "Legal Research in preparation for followup [sic] client call" on September 1, 2021 (1.25 hours, now reduced by .625 hours); and "Call with co-counsel" on September 2, 2021 (.25 hours, now reduced by .125 hours). Dkt. No. 45-2 at 1; Dkt. No. 45-4 at 1.[8]

The Court also deducts half of the time Stevens expended on the following tasks: "Research and email to client" on June 3, 2021 (40 minutes, now reduced by 20 minutes); "Research law and facts" on June 3, 2021 (96 minutes, now reduced by 48 minutes); "Email client and research law" on June 3, 2021 (96 minutes, now reduced by 48 minutes); "Writing memo" on June 4, 2021 (215 minutes, now reduced by 107.5 minutes); "Search HR" on June 16, 2021 (18 minutes, now reduced by 9 minutes); "Read pleading & research" on June 18, 2021 (21 minutes, now reduced by 10.5 minutes); "Call with Andrew" on August 16, 2021 (20 minutes, now reduced by 10 minutes); "Review motions" on August 16, 2021 (15 minutes, now reduced by 7.5 minutes); "Research case law" on September 1, 2021 (33 minutes, now reduced by 16.5 minutes); and "Read through emails"

---

[7] SAS technically challenges these two entries as unrecoverable fees associated with interoffice communications. The Court addresses them here instead.

[8] SAS technically challenges the final entry, "Call with co-counsel," as unrecoverable fees associated with interoffice communications. The Court addresses it here instead.

on October 14, 2021 (14 minutes, now reduced by 7 minutes). *Id.* at 1–2.[9] And last, the Court

reduces by half the time Stevens spent on the following calls and phone conferences: "Phone call

with Andrew" on June 4, June 17, and October 26, 2021 (92 minutes, now reduced by 46 minutes);

"Call with Andrew & email to defense counsel" on August 11, 2021 (35 minutes, now reduced by

17.5 minutes); and "Phone conference with Andrew & Greg" on September 2, 2021 (17 minutes,

now reduced by 8.5 minutes). Dkt. No. 45-4 at 1.[10]

     *c.*    *Block Billing*

     SAS also contends that counsel's records "are full of block billed entries." Dkt. No. 45 at

10. It identifies 38.7 hours of allegedly block billed work and lobbies for an additional 20%

reduction. *Id.* at 11; *see* Dkt. No. 45-3 at 1–2. According to SAS, "the Court cannot properly

determine the amount of time that [Abrams'] counsel spent on individual tasks and cannot properly

evaluate whether the amounts are recoverable or not." Dkt. No. 45 at 11. The Court does not agree.

     "Block billing" refers to "the time-keeping method by which each lawyer and legal

assistant enters the total daily time spent working on a case, rather than itemizing the time

expended on specific tasks." *Welch*, 480 F.3d at 945 n.2 (internal quotation marks omitted)

(quoting *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n.15 (10th Cir.

1996)). "[S]uch billing practices are legitimate grounds for reducing or eliminating certain claimed

hours[.]" *Mendez v. Cnty. Of San Bernardino*, 540 F.3d 1109, 1129 (9th Cir. 2008), *overruled on

other grounds by Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014) (en banc). However,

"lawyers are not required to record in great detail how each minute of their time is spent on a case;

rather, they must only provide enough evidence to show that the effort expended during those

---

[9] The Court already excised as duplicative the 37 minutes Stevens logged for an unspecified "Phone call" on June 3, 2021. Dkt. No. 45-2 at 1; *see* Section II.A.2.a.

[10] SAS technically challenges this final batch of entries as unrecoverable fees associated with interoffice communications. The Court addresses them here instead.

hours was reasonable." *Cath. Cmty. Servs.*, 2012 WL 13050592, at *5 (entry was not block billing "in the negative sense of the term" because it covered "a relatively limited amount of time" and provided "sufficient information for the Court to assess the nature of the work done").

The Court has carefully reviewed the challenged entries and finds no block billed time that is not otherwise unrecoverable[11] preventing it from confirming whether the work and hours expended were reasonable. *See* Dkt. No. 45-3 at 1–2. That several of the entries are relatively lengthy and include descriptions for multiple tasks does not render them impermissible block billing. *See Cath. Cmty. Servs.*, 2012 WL 13050592, at *5 ("When the time does elapse more than one hour, counsel usually identifies two or three different tasks that were accomplished in that particular span of time, which is common in private practice."). The longest entry is just over four hours, and each description provides sufficient detail for meaningful review of the tasks completed during the logged time. The primary issue with block billing (lack of information over too lengthy a period) is therefore not implicated here. *See Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1103 (N.D. Cal. 2010) (entries were not block billing because "individual tasks [were] specified" and "detailed enough for the Court to assess the reasonableness of the hours billed.").

### d. *Intraoffice Communications*

SAS argues that Abrams should not recover fees for interoffice communications among his legal team. Dkt. No. 45 at 11. It specifically itemizes 6.6 hours of "routine communications" that it wants cut from the total fees. *Id.*; *see* Dkt. No. 45-4 at 1. "It is reasonable for the members of the legal team to meet regularly to develop strategy, update one another on developments, and give and receive instructions regarding assignments." *Bidwal*, 2019 WL 4039955, at *9 (cleaned up);

---

[11] The Court has already reduced or declined to award some of the challenged time on other grounds. For example, it has declined to award the time expended on the motion for clarification.

*see also, e.g.*, *Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC*, Nos. 13-CV-3016-TOR, 13-CV-3017-TOR, 13-CV-3019-TOR, 2016 WL 3582754, at *15 (E.D. Wash. Jan. 12, 2016) (hours billed for conference calls and team meetings were not excessive because they "provided an efficient way for the attorneys involved in this case to strategize, discuss case activities, share ideas, and divide work."). The entries SAS challenges as "routine" office communications involve compensable time for collaboration and strategizing. For example, Grimm billed for (1) an email to Stevens involving research on "remand possibilities and how to return to small-claims court" on June 2, 2021; (2) emails to co-counsel about the draft template for an "extension of time and stipulation on the disclosures" on August 12, 2021; and (3) an "[e]xtensive discovery strategy email to the team about how to prove the case and how to narrowly focus on the case" on October 8, 2021. Dkt. No. 45-4 at 1. This last entry also included time for "discussion of whether the disclosures [were] sufficient[.]" *Id.* Keenan's entry for allegedly "routine" intraoffice communication is likewise compensable. He billed a half hour for a phone call with Grimm, during which the two discussed "settlement strategy and recap[ped the] deposition and post-deposition client call[.]" *Id.* The Court declines to reduce the hours for these tasks.[12]

> ### e. Clerical Tasks

SAS last targets .95 hours that Grimm billed for clerical tasks. Dkt. No. 45 at 11–12; *see* Dkt. No. 45-5 at 1. Abrams contends that at least part of one disputed entry—which involves finalizing the motion for clarification—is not a clerical task. Dkt. No. 49 at 9; *see RLI Ins. Co. v. Polished 3 LLC*, No. 2:21-CV-691-BJR, 2022 WL 1450015, at *2 (W.D. Wash. May 9, 2022) ("finalizing" court filings "is legal in nature and generally requires legal knowledge to perform

---

[12] The Court has already reduced several of the challenged entries for inadequate specification.

correctly."). However, "[i]n the interest of the Court's time and given the small amount at stake in this objection," he agrees to a .95-hour reduction in billable time. Dkt. No. 49 at 9. The Court has already cut Grimm's entry involving the motion to clarify, *see* Section II.A.2.a, so it will subtract the 35 minutes of time for his other two clerical entries. *See* Dkt. No. 45-5 at 1.

The Court finds other problems in terms of clerical tasks:

- Grimm spent 30 minutes "calendar[ing] all the new case deadlines." Dkt. No. 58 at 9.

- Stevens billed roughly 3.4 hours researching, drafting, and editing two subpoenas and contacting the process server. *Id.* at 13.

The Court declines to award fees for this time. *See Missouri v. Jackson*, 491 U.S. 274, 288 n.10 (1989) ("Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."); *Neil v. Comm'r of Soc. Sec.*, 495 Fed. Appx. 845, 847 (9th Cir. 2012) (holding that "the district court did not abuse its discretion in declining to award [plaintiff] attorney's fees for purely clerical tasks such as filing documents and preparing and serving summons."); *see also Compass Bank v. Morris Cerullo World Evangelism*, No. 13-CV-0654-BAS (WVG), 2015 WL 3442030, at *8 (S.D. Cal. May 28, 2015) (reducing billing entries because "certain tasks were ministerial and did not require an attorney to perform" them, including drafting a revised subpoena, preparing instructions for service, and phone calls and emails to reschedule a deposition).

3. Adjustment Under the *Kerr* Factors

Abrams indicates that no upward or downward adjustment under the *Kerr* factors is necessary. Dkt. No. 39 at 9. SAS, on the other hand, counters that an additional 20% reduction is appropriate. Dkt. No. 45 at 12–14. Its argument is fourfold. First, and with respect to the time and labor involved, it claims that this case was "straightforward" and settled before much happened:

"Written discovery was exchanged, and one deposition was taken. Neither party filed a motion for summary judgment, there was only one dispositive motion based on [Abrams'] original pro se complaint, and the case settled before discovery was completed." *Id.* at 12. Second, it contends that "[t]here is nothing novel about this case" and "nothing else to indicate why this case required the time and effort of three experienced lawyers." *Id.* at 13.[13] Third, SAS suggests that this case did not preclude Abrams' counsel from taking other work or otherwise impact its other cases. *Id.* And last, it argues that Abrams could have found other able counsel "who may have resolved this matter in a more effective manner[.]" *Id.*

SAS has failed to overcome the strong presumption that the lodestar figure represents the reasonable fees in this case. *Perdue*, 559 U.S. at 554. The Court construes its arguments as a bid for adjustment under the first, second, third, fourth, and seventh *Kerr* factors. The Court has accounted for the second factor—the novelty and difficulty of the questions involved—in determining the reasonable hourly rate and hours reasonably expended, and it may not make another adjustment based on that factor. *Morales*, 96 F.3d at 364 n.9.[14] As for the remaining factors, the Court does not find a downward adjustment warranted. The amount of work required in this case is accurately reflected in the reasonable-hours determination. That Abrams' counsel was not precluded from taking other work or otherwise restricted by their obligations here—a dubious and unsubstantiated assertion, especially given the Digital Justice Foundation's limited

---

[13] SAS's brief contains arguably contradictory assertions about counsel's experience. For example, it elsewhere suggests that the Digital Justice Foundation is "wholly inexperienced in the world of FDCPA litigation[.]" Dkt. No. 45 at 1.

[14] The Court pauses to again dispense with SAS's repeated complaints about this case being "straightforward" or otherwise not complex enough to justify the fees incurred. As explained above, SAS's post-hoc characterization of Abrams' FDCPA claims as "run-of-the-mill" contradicts the parties' November 2021 joint status report. *See* Dkt. No. 23 at 3, 6 (indicating that some of Abrams' FDCPA claims were "highly complex"). And even if this is a standard FDCPA action, SAS's decision to defend against Abrams' claims until May 2022 "turned this relatively simple litigation into a struggle that lasted for more than a year," and "[w]ith months of litigation come months of attorney fees." *Rebic*, 2011 WL 4899979, at *2 (although action was "not complex, it became protracted because [defendant] chose to aggressively defend it.").

1    resources as a non-profit firm—is insufficient to justify a departure from the lodestar figure. And

2    finally, whether Abrams could have retained more efficient counsel (another conclusory and

3    unsupported assertion given his lack of financial resources) likewise does not warrant an

4    adjustment. *See Moreno*, 534 F.3d at 1115 (district courts should not "attempt to impose [their]

5    own judgment regarding the best way to operate a law firm" or "determine if different staffing

6    decisions might have led to different fee requests.").

7         One final point. SAS suggests that Abrams is not entitled to recover more than $75,000 in

8    attorney fees because he "only recovered statutory damages[.]" Dkt. No. 45 at 13 ("[C]ounsel

9    seeks 7500% of the offer of judgment amount in attorney's fees in a straightforward FDCPA matter

10   that did not result in any extraordinary results for [Abrams], did not make any new case law, and

11   did not prove any of the contents in the Complaint."); *id.* at 2 (counsel seeks "seventy-five times

12   the relief [Abrams] obtained—for handling this relatively simple FDCPA lawsuit."). The Court

13   construes this as a proportionality argument. To the extent SAS claims that the requested attorney

14   fees are per se excessive simply because Abrams settled the case for $1,001, the Court disagrees.

15        A district court must demonstrate that it considered the relationship between the amount of

16   the fee awarded and the results obtained. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th

17   Cir. 2009); *see Gonzalez v. Allied Collection Servs., Inc.*, 852 F. App'x 264, 267 (9th Cir. 2021)

18   (district court abused its discretion in not adequately accounting for the degree of success in

19   FDCPA case). But the amount of damages recovered "is only one of several factors that a court

20   must consider in determining the fee award," *Evon v. Law Offs. Of Sidney Mickell*, 688 F.3d 1015,

21   1033 (9th Cir. 2012), and lodestars should not be reduced "simply because the amount of damages

22   recovered on a claim was less than the amount requested," *Quesada v. Thomason*, 850 F.2d 537,

23   539 (9th Cir. 1988). The rationale for this is well established. In the context of fee-shifting civil

24   rights statutes, the Supreme Court has observed that a strict rule of proportionality "would make it

difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts." *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986). "The same is true in consumer protection cases: where the monetary recovery is generally small, requiring direct proportionality for attorney's fees would discourage vigorous enforcement of the consumer protection statutes." *Evon*, 688 F.3d at 1033; *accord Kottle v. Unifund CCR, LLC*, 992 F. Supp. 2d 982, 985–86 (C.D. Cal. 2014) (reductions "must be based on valid reasons" rather than "mathematical disproportionality" because "there rarely will be extensive damages," and "a rule of proportionality would discourage vigorous enforcement of [the] FDCPA.").

It is therefore "of little concern to the court that the fees [Abrams'] attorneys request[ed] greatly exceed h[is] recovery." *Rebic*, 2011 WL 4899979, at *2; *see, e.g.*, *Afewerki v. Anaya Law Grp.*, 779 F. App'x 449, 450–52 (9th Cir. 2019) (reinstating $83,000 fee award for $1,001 offer of judgment); *Russell v. GC Servs. Ltd. P'ship*, No. 2:19-CV-273-RMP, 2020 WL 6157782, at *3 (E.D. Wash. Oct. 15, 2020) ("[A]n award of attorney's fees may greatly exceed the actual damages recovered in FDCPA actions."). After all, the FDCPA's fee-shifting scheme is designed to encourage attorneys to take cases like Abrams', where "damages are typically . . . too small to persuade an attorney to enter a contingent fee arrangement or to persuade a litigant to pay a lawyer by the hour." *Rebic*, 2011 WL 4899979, at *2; *see also Camacho*, 523 F.3d at 978 ("The reason for mandatory fees is that congress chose a 'private attorney general' approach to assume enforcement of the FDCPA." (citation omitted)). SAS has not demonstrated any reason to further reduce the fee award beyond its misguided reliance on Abrams' recovery of just $1,001 in statutory damages. Although paltry at first blush, this represents a complete recovery under the FDCPA. *See*

1     *Evon*, 688 F.3d at 1033 ($1,010.99 settlement in FDCPA case constituted "a complete recovery"

2     because it was the full amount of allowable statutory damages).[15]

3     **B.**     **Reasonable Fees Under the CPA**

4        Neither party addresses the standard for calculating reasonable attorney fees under the

5     CPA. Federal courts exercising pendent jurisdiction over state claims must apply state law when

6     determining fees for those claims. *See Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478–

7     79 (9th Cir. 1995); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ("Because

8     Washington law governed the claim, it also governs the award of fees."). Stevens logged 497

9     minutes (or roughly 8.28 hours) for research on the CPA. Dkt. No. 58 at 12.[16]

10        Like the FDCPA, the CPA permits a successful claimant to recover reasonable attorney

11     fees. *See* Wash. Rev. Code § 19.86.090; *Mason v. Mortg. Am., Inc.*, 792 P.2d 142, 149 (Wash.

12     1990) (a plaintiff need not establish damages to be entitled to attorney fees under the CPA). The

13     trial court retains broad discretion to fix the proper amount of fees. *Wash. State Physicians Ins.*

14     *Exch. & Ass'n v. Fisons Corp.*, 858 P.2d 1054, 1073 (Wash. 1993). As is the case with federal fee-

15     shifting statutes, Washington courts employ the two-step lodestar approach to calculate reasonable

16     fees for CPA (and other state) claims. *Id.* This entails (1) "multiplying a reasonable hourly rate by

17     the number of hours reasonably expended on theories necessary to establish the elements of a

18     Consumer Protection Act cause of action"; and (2) "adjusting that lodestar up or down based upon

19

20

---

21  [15] The Court notes that "success" in an FDCPA action is not always synonymous with pecuniary recovery. *See Evon*,

22  688 F.3d at 1033 (that lawsuit spurred debt collector to cease unlawful conduct was an "important consideration" when assessing fees); *Rodriguez v. Nancy A. Smith & Assocs.*, No. 3:12-CV-5252-RBL, 2012 WL 5207545, at *1 (W.D. Wash. Oct. 22, 2012) (FDCPA plaintiffs vindicate important rights that cannot be valued solely in monetary terms).

23  [16] Although the complaint contains eight FDCPA claims and only one CPA claim, the Court evaluates the reasonableness of the hours claimed in these entries under Washington law because the inquiry is materially identical under federal law and, in any event, the outcome is the same.

24

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY FEES - 27

the contingent nature of success (risk) and, in exceptional circumstances, based also on the quality of work performed." *Id.*[17]

An attorney's established rate for billing clients will likely be reasonable. *Fisons Corp.*, 858 P.2d at 1073. This standard fee, however, is not per se reasonable and other factors (such as reputation and the type of work at issue) may warrant an adjustment. *Bowers v. Transamerica Title Ins. Co.*, 675 P.2d 193, 203–04 (Wash. 1983). As for computing the number of hours reasonably expended, attorneys "must provide reasonable documentation of the work performed." *Id.* at 203. "This documentation need not be exhaustive or in minute detail, but must inform the court, in addition to the number of hours worked, of the type of work performed and the category of attorney who performed the work (*i.e.*, senior partner, associate, etc.)." *Id.* The Court must then "discount hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time." *Id.* The Washington Supreme Court has, in this respect, cautioned against exclusive reliance on counsel's fee affidavits. *SentinelC3, Inc. v. Hunt*, 331 P.3d 40, 48 (Wash. 2014); *see Nordstrom, Inc. v. Tampourlos*, 733 P.2d 208, 212 (Wash. 1987) (a trial court should not "merely rely[] on the billing records of the plaintiff's attorney," but should instead "make an independent decision as to what represents a reasonable amount for attorney fees"; the amount actually spent by the attorney "may be relevant, but it is in no way dispositive").

Washington law continues to track federal law with respect to the second step of the fee calculation: adjustment of the lodestar figure. Although this portion of the inquiry focuses on the contingent nature of success and quality of work performed (sometimes referred to as the "*Bowers* considerations"), lodestar departures are not limited to those two grounds. The lodestar figure may

---

[17] Although the lodestar method is not the exclusive means of determining reasonable attorney fees in Washington, a trial court does not abuse its discretion by using that method. *Baker v. Fireman's Fund Ins. Co.*, 428 P.3d 155, 162 & n.5 (Wash. Ct. App. 2018). The parties do not press for or even identify any other method of ascertaining fees in this case.

also be adjusted "to account for subjective factors such as the level of skill required by the litigation, the amount of potential recovery, time limitations imposed by the litigation, the attorney's reputation, and the undesirability of the case." *Band v. Dep't of Lab. & Indus.*, 989 P.2d 1111, 1114 (Wash. 1999); *see also Nwauzor v. GEO Grp., Inc.*, 3:17-CV-05769-RJB, 2021 WL 5907797, at *3 (W.D. Wash. Dec. 14, 2021) ("These categories are considered in the *Kerr* factors and the *Kerr* analysis applies to the *Bowers* considerations."). But the lodestar figure "is presumed to adequately compensate an attorney" and adjustments "are reserved for 'rare' occasions." *Miller v. Kenny*, 325 P.3d 278, 304 (Wash. Ct. App. 2014) (quoting *Sanders v. State*, 240 P.3d 120, 142 (Wash. 2010)). The party seeking an adjustment bears the burden of justifying the requested deviation. *Fisons Corp.*, 858 P.2d at 1073.

For the reasons discussed in Section II.A.1, the Court reduces Stevens' hourly rate to $200 with respect to the CPA-related billing entries. It also finds the hours billed for researching the CPA reasonable. However, and in accordance with Section II.A.2.a, the Court reduces by one fourth the August 28, 2021 entry for "Research WACPA and draft complaint" (254 minutes, now reduced by 63.5 minutes) to account for the excessive time counsel expended on the amended complaint. Dkt. No. 58 at 12.

## C.  Fees-On-Fees

The Court last addresses Abrams' request (made in his reply brief) for an additional $11,000 in fees associated with his reply and motion for retrospective relief from the briefing deadline. Dkt. No. 49 at 1; *see* Dkt. No. 48 at 2.[18] SAS argues that these fees are precluded under

---

[18] Although Abrams appears to attribute the additional $11,000 fee request to counsel's "time spent pursuing fees" generally—i.e., the initial fee motion as well the reply, *see* Dkt. No. 49 at 10—the Court struck this portion of his reply brief because it exceeded the parties' previously agreed-upon page limit. *See* Dkt. No. 51 (striking pages 10 through 13 of Abrams' reply).

the plain language of its offer of judgment, which limits recoverable costs and fees to those "incurred up to and including June 2, 2022[.]" Dkt. No. 45 at 14.

      1.    <u>SAS's Surreply and Motion to Strike</u>

      SAS moved to strike the declarations attached to Abrams' reply brief because, in its view, they constitute new evidence. Dkt. No. 52 at 1–3; *see* LCR 7(g).[19] "It is clear that in the Ninth Circuit new issues and evidence may not be raised in reply briefs." *Atigeo LLC v. Offshore Ltd., D*, No. C13-1694-JLR, 2014 WL 239096, at *8 (W.D. Wash. Jan. 22, 2014) (citing *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996)). Thus, when new material is raised in reply, district courts have discretion to strike that material. *Id.*; *see Nautilus Grp., Inc. v. Icon Health & Fitness, Inc.*, 308 F. Supp. 2d 1208, 1214 (W.D. Wash. 2003) (striking a declaration that contained new evidence submitted in reply). But evidence is not "new" when "it is submitted in direct response to evidence or arguments raised in the opposition." *HDT Bio Corp. v. Emcure Pharms., Ltd.*, No. C22-0334-JLR, 2022 WL 3018239, at *3 (W.D. Wash. July 29, 2022); *see, e.g.*, *Terrell v. Contra Costa Cnty.*, 232 F. App'x 626, 629 n.2 (9th Cir. 2007) (reply evidence was not new where reply brief "addressed the same set of facts supplied in [plaintiff]'s opposition to the motion but provide[d] the full context to [plaintiff]'s selected recitation of the facts."); *Hendon v. Baroya*, No. 1:05-CV-01247-SAB-PC, 2016 WL 758663, at *2 (E.D. Cal. Feb. 25, 2016) (concluding that the reply evidence and arguments were not new because they were central to the argument raised in the defendants' motion and rebutted the evidence and arguments that the plaintiff offered in his opposition).

---

[19] Abrams' supporting declarations, Dkt. Nos. 47, 48, were timely filed on August 12, 2022. However, he filed his untimely reply brief two minutes after midnight on August 13, 2022. Dkt. No. 49. SAS did not file its notice of intent to file a surreply until August 17, 2022, four days later. Dkt. No. 50; *see* LCR 7(g)(1) (a party must file a notice of intent to file a surreply "as soon after receiving the reply brief as practicable."). And it did not file its surreply until August 19, 2022—more than five days after Abrams filed his reply. Dkt. No. 52; *see* LCR 7(g)(2) ("The surreply must be filed within five days of the filing of the reply brief[.]").

The Court declines to strike either declaration. The Court agrees with SAS that Abrams could have—and should have—submitted Stevens' declaration (and the information therein) when he filed his fee motion. Dkt. No. 52 at 2; *see Atigeo*, 2014 WL 239096, at *8 (striking portions of declaration where party provided no reason why it could not have raised the material earlier). But this declaration does not alter the outcome discussed above.

The other declaration at issue—Grimm's second—contains an itemization of hours expended on Abrams' reply brief and motion for retrospective relief from the briefing deadline. Dkt. No. 48 at 1–2. But Grimm's declaration, like Stevens', does not change the outcome in this case. As explained in more detail below, Abrams is not entitled to attorney fees incurred after June 2, 2022—the expiration of SAS's Rule 68 offer of judgment.[20]

### 2.    Abrams is Not Entitled to Fees-on-Fees

Time spent establishing a party's entitlement to reasonable attorney fees (commonly referred to as "fees on fees") is generally compensable. *Camacho*, 523 F.3d at 981; *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986). Abrams would therefore typically be permitted to recover fees associated with his counsel's drafting of the fee motion and reply brief. However, the rules of contract construction apply to Rule 68 offers of judgment, and attorney fees can be waived or limited by clear and unambiguous language to that effect. *Nusom v. Comh Woodburn, Inc.*, 122 F.3d 830, 833 (9th Cir. 1997); *Guerrero v. Cummings*, 70 F.3d 1111, 1113 (9th Cir. 1995) (a settlement offer can be conditioned upon the waiver of attorney fees).

In *Holland v. Roeser*, the defendant's offer of judgment permitted the plaintiffs to recover "costs now accrued and reasonable attorney fees as determined by the court." 37 F.3d 501, 502

---

[20] Abrams could not recover fees associated with his motion for retrospective relief from the briefing deadline regardless of SAS's offer of judgment. As the Court has previously explained, time spent correcting mistakes is not compensable. *See* Dkt. No. 57 at 8; *Stephens v. Marino, White, O'Farrell & Gonzalez*, No. C10-5820-BHS, 2011 WL 4747920, at *4 (W.D. Wash. Oct. 7, 2011); *Bea-Mone v. Silverstein*, No. 8:17-CV-00550-JLS-DFM, 2019 WL 762676, at *3 (C.D. Cal. Feb. 20, 2019).

(9th Cir. 1994). The Ninth Circuit concluded that this language was ambiguous because a reasonable person could read the provision as extending recovery beyond existing costs to fees not already accrued. *Id.* at 504. Put differently, the plaintiffs could have reasonably interpreted the fee provision as entitling them to all costs accrued at the time of acceptance plus all reasonable attorney fees incurred thereafter. *Id.* Not so here. SAS's offer of judgment leaves no room for doubt as to which costs and attorney fees are recoverable: "Plaintiff shall be entitled to all permissible costs incurred and reasonable attorneys' fees incurred in pursuing the claims against Defendant in this action *prior to the expiration of this offer*, the total amount to be determined by the Court upon application by Plaintiff or by agreement of the parties." Dkt. No. 37 at 4 (emphasis added); *see Herrington v. Cnty. of Sonoma*, 12 F.3d 901, 907 (9th Cir. 1993) ("This offer is clear on its face, and we reject the [plaintiffs]' efforts to inject ambiguity into the settlement offer by listing those things it does not promise[.]"). Abrams is therefore entitled to costs and attorney fees incurred up to and through June 2, 2022, when the offer of judgment expired. *See* Dkt. No. 37 at 5 ("[T]his offer must be accepted within 14 days after being served; if a notice of acceptance is not provided within 14 days after service of this Offer, the Offer automatically expires.").

Indeed, the Ninth Circuit reached the same conclusion with respect to materially identical language in *Guerrero*. The offer of judgment in that case limited recovery to "reasonable attorney fees and costs incurred by th[e] plaintiff prior to the date of th[e] offer in an amount to be set by the court." 70 F.3d at 1112–13. In rejecting the plaintiffs' contention that the provision left open the possibility of post-settlement fees, the court highlighted the plain and unambiguous language limiting fees to those accrued before the date of the offer. *Id.* at 1113. And it distinguished the language at issue from that in *Holland*:

> In the *Holland* offer, the term "now accrued" modified "costs," but did not clearly modify "reasonable attorney fees." Therefore, the offer could be read to mean that while costs would be limited to those "now accrued," attorney's fees would not be

so limited. In the [plaintiffs]' offers, on the other hand, "incurred prior to this date" modifies "reasonable attorney fees and costs." Both attorney's fees and costs are limited to those incurred prior to the date of the offers.

*Id.* The same reasoning applies here. In SAS's offer of judgment, "prior to the expiration of this offer" modifies "costs incurred and reasonable attorneys' fees incurred." Recoverable costs and attorney fees are accordingly limited to those incurred prior to the expiration of the offer. And it is those fees—and only those fees—that the Court must determine. Abrams' acceptance of SAS's offer clearly and unambiguously waived any costs and fees incurred after June 2, 2022. *See Rafanan v. Focus Receivables Mgmt., LLC*, No. 09-CV-02715-JAM-KJM, 2010 WL 2923284, at *1 (E.D. Cal. July 26, 2010) (express terms of offer limited recoverability of fees and costs to those reasonably incurred through and including ten days after the offer was made, and acceptance of the offer operated as a waiver of any fees and costs incurred after the expiration of the ten-day period).

Abrams is therefore precluded from recovering the fees associated with his fee motion and reply brief. Additionally, the Court must subtract from the total hours any entries dated after June 2, 2022. There is one: Stevens billed 4 minutes for "Draft Notice of Acceptance of Offer" on June 3, 2022. Dkt. No. 58 at 14. The Court excises this time. As depicted in the following table, Abrams is entitled to $43,639.58 in reasonable attorney fees.

| Attorney | Billed Rate | Billed Hours | Requested Total | Adjusted Rate | Deducted Hours | Adjusted Hours | Lodestar |
|---|---|---|---|---|---|---|---|
| Andrew Grimm | $400 | 82.3 | $32,920 | $350 | 14.125 | 68.175 | $23,861.25 |
| Gregory Keenan | $400 | 39.6 | $15,840 | $300 | 10.9 | 29.2 | $8,610.00 |
| Rory Stevens | $350 | 75.4 | $26,390 | $200 | 19.56 | 55.84 | $11,168.33 |
| Total | | 197.3 | $75,150 | | 35 | 162.3 | $43,639.58 |

1

### III.   CONCLUSION

2          For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Abrams'

3  Motion for Attorney Fees. Dkt. No. 39.

4          Dated this 31st day of March, 2023.

5

6                                          Lauren King
                                           United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24